UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRAIG JOSEPH AUCOIN | CIVIL ACTION |
| VERSUS | NO. 25-939 |
| DOMINIQUE BAIO ET AL. | DIVISION (3) |

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment on Behalf of Defendant Tina Authement (R. Doc. 61). Plaintiff Craig Joseph Aucoin opposes the motion.[1] Authement filed a reply brief.[2] Having considered the memoranda, the record, and the applicable law, Authement's motion for summary judgment is granted.

## I. Background

Craig Joseph Aucoin, who was a pretrial detainee housed in the Jerry L. Larpenter Criminal Justice Complex[3] at the time of the allegations in his complaint, filed this *pro se* civil action under 42 U.S.C. § 1983 against defendants the Terrebonne Parish Sheriff's Office, Terrebonne Parish Consolidated Government, Sheriff Tim Soignet, Deputy Brendon Hebert, Deputy Brice Duthu, Deputy Collin Partin, Colonel Stephen Bergeron, Warden Rhonda Ledet, Lieutenant Brie Boudreaux, Lieutenant Samantha Bourgeois, Medical Administrator April Tomlin, Tina Authement, Kellie Gaudet, and Dominique Baio.[4] At the time of the allegations in the complaint,

[1] R. Doc. 72.
[2] R. Doc. 74.
[3] Formerly known as the Terrebonne Parish Criminal Justice Complex.
[4] Aucoin was convicted prior to the time he filed his complaint, R. Doc. 4-1 at 33, and was later transferred to a Louisiana Department of Corrections facility. R. Doc. 40.

Authement was employed at the jail as an emergency medical technician.[5] Aucoin raises claims of conspiracy to violate his constitutional rights, deliberate indifference to his medical needs, retaliation, discrimination in violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), as well as various state law claims.

## II. Standard of Law

### A. Summary Judgment

Summary judgment is appropriate if a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when its resolution might affect the case's outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 343 (5th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Courts resolve factual controversies in favor of the nonmoving party. An actual controversy, however, exists only "when both parties have submitted evidence of contradictory facts." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quotation omitted). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

[5] R. Doc. 61 at 1.

Summary judgment is proper when "a party [] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Once the moving party shows "that there is an absence of evidence to support the non-moving party's cause," the nonmoving party must come forward with "specific facts" showing a genuine factual issue for trial. *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Celotex*, 477 U.S. 317 at 325).

Congress amended Rule 56(c) in 2010 to "permit[ ] a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (determining that the district court abused its discretion when it refused to consider unsworn expert reports at summary judgment). But whether presented by affidavit or unsworn declaration, statements must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4). Statements made without personal knowledge are not capable of being presented in an admissible form at trial. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018). These principles are "particularly relevant where a *pro*

*se* plaintiff's allegations form his entire response in opposition to summary judgment." *Id.* (citing *Davis v. Fernandez*, 798 F.3d 290, 294–96 (5th Cir. 2019)).

**B. Section 1983**

Section 1983 authorizes claims against a person who, acting under color of state law, deprived the claimant of any rights secured by the Constitution and the laws of the United States. *See* 42 U.S.C. § 1983. The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999). A plaintiff must satisfy three elements to establish § 1983 liability: (1) deprivation of a right secured by the Constitution or laws of the United States; (2) occurrence under color of state law; and (3) causation by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

**C. Qualified Immunity**

Authement has urged qualified immunity as a basis for summary judgment. A state official sued in their personal capacity under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017)).

Qualified immunity functions as an immunity from suit, rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Qualified immunity adjusts "the nature of the summary-judgment burden, how and when the burden shifts, and what it takes to satisfy the burden. *Tuttle v. Gallegos*, 180 F.4th

209, 217 (5th Cir. 2026) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020)). Given Authement's good-faith invocation of qualified immunity, Aucoin has the burden of proof to show that the defense is unavailable. *Scott v. City of Mandeville*, 69 F.4th 249, 254–55 (5th Cir. 2023). To carry his burden to overcome defendants' qualified immunity defense here, Aucoin "must show: (1) that the [defendants] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Crandel v. Hall*, 75 F.4th 537, 543 (5th Cir. 2023) (internal citation and quotation marks omitted). He need not present "absolute proof" but must offer more than "mere allegations." *Tuttle*, 180 F.4th at 217–18 (citations omitted). These steps may be evaluated in any order and defendant is entitled to qualified immunity if Aucoin fails to show either one. *Pearson*, 555 U.S. at 242; *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011).

## III. Analysis

### A. Aucoin is not entitled to an additional opportunity for discovery under Rule 56(d).

Aucoin argues that because he has not had access to Authement's exhibits to her motion for summary judgment, he has not been able to conduct adequate discovery to oppose Authement's motion for summary judgment.[6]

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

[6] R. Doc. 72 at 2–5.

Fed. R. Civ. P. 56(d). To obtain time for discovery under Rule 56(d), Aucoin must make two showings. First, he must establish that "additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quotation omitted). Second, he must establish that he "diligently pursued discovery." *Id.* (quotation omitted).

Aucoin has not submitted an affidavit or declaration in support of his request for relief under Rule 56(d). Courts routinely deny Rule 56(d) requests on this basis alone. *See Scotch v. Letsinger*, 593 F. App'x 276, 278 (5th Cir. 2014) (holding that the district court did not err in denying the plaintiff's Rule 56(d) request where he did not submit an affidavit or declaration); *Jackson v. Gray*, 345 F.R.D. 597, 603 (E.D. La. 2024) ("to obtain a continuance under Rule 56, the nonmovant must submit 'an affidavit showing how the outstanding discovery could have assisted him in opposing the motion.'") (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990)). Because "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment," however, the "absence of documents" is not fatal to Aucoin's Rule 56(d) request. *James v. Smith*, 152 F.4th at 604 (quoting *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980)).

Aucoin's request must still be denied, however, because he has not shown that he has diligently pursued discovery. In his sole motion to compel since this case was filed on May 12, 2025, Aucoin stated that he had not received the answer filed by some defendants (similar to his arguments relative to his Rule 56(d) request).[7] The

[7] R. Doc. 33.

record reflected that the answer was mailed to Aucoin, although not before he filed his motion.[8] With the exception of the answer, Aucoin acknowledged that he had received all legal mail sent directly to the facility within two to seven days after mailing.[9]

Aucoin's argument that he did not have access to Authement's exhibits is unpersuasive. Authement attaches to her motion for summary judgment a certificate of service to Aucoin's listed address on June 10, 2026.[10] In his response to the instant motion for summary judgment, Aucoin addresses Authement's affidavit, which is attached to Authement's motion along with her exhibits.[11] Moreover, the Court granted Aucoin's two motions for extension of time to respond to Authement's motion, neither of which raises his access to motion for summary judgment exhibits.[12] Aucoin's prior motion to compel demonstrates that he is fully capable of requesting filings to which he lacks access. Thus, the Court cannot conclude based on the current record that Aucoin has diligently pursued discovery. Aucoin may not avoid summary judgment under Rule 56(d).[13]

### B. Authement is entitled to summary judgment on the ADA and RA claims.

Authement allegedly discriminated against Aucoin because of his disability under the ADA and RA. "[S]uits under the ADA and Rehabilitation Act must be

[8] The Court nonetheless directed the Clerk to mail Aucoin a copy. R. Doc. 34.
[9] R. Doc. 33 at 4.
[10] R. Doc. 61-10 at 1.
[11] R. Doc. 72 at 6. The affidavit does not appear elsewhere in the record.
[12] R. Docs. 69–71.
[13] Nonetheless, the Court will direct the Clerk to mail an additional copy of Authement's motion (including exhibits) to Aucoin.

brought against a public entity as opposed to individuals." *Aucoin v. Baio*, No. CV 25-939, 2026 WL 1108884, at *2 (E.D. La. Mar. 1, 2026), *report and recommendation adopted,* No. CV 25-939, 2026 WL 1103624 (E.D. La. Apr. 23, 2026) (citing *Phillips Next Friend of J.H. v. Prator*, No. 20-30110, 2021 WL 3376524, at *2 n.2 (5th Cir. Aug. 3, 2021), *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020), and *Smith v. Hood*, 900 F.3d 180, 184 n.6 (5th Cir. 2018)) (quotations omitted). Because Authement is an individual, she is entitled to summary judgment on Aucoin's ADA and RA claims.

**C. Authement is entitled to summary judgment on the confiscation of the wheelchair.**

Aucoin alleges that Authement violated his rights by taking his wheelchair. Aucoin admits, however, that Authement did not take the wheelchair from him and was "nowhere around" when the wheelchair was taken.[14] *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). According to Aucoin, "Dominique Baio is the person who issued the order"[15] and ultimately took his wheelchair.[16] Thus, there is no basis for Authement's liability relative to the confiscation of Aucoin's wheelchair.

**D. Authement is entitled to summary judgment on the medical indifference claim.**

**1. Authement's observation that Aucoin could ambulate.**

[14] R. Doc. 61-3 at 212:8–12.
[15] R. Doc. 72-1, ¶ 42.
[16] R. Doc. 61-3 at 193:16–194:1.

Aucoin alleges that Authement made incorrect assessments of his ability to ambulate, which affected his access to accommodations and medical care. As the Fifth Circuit has explained:

> The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference is akin to "subjective recklessness." *Id.* at 839. It is a "stringent" and "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A plaintiff "must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quotation marks, citation, and alterations omitted).
>
> "Mere negligence, neglect or medical malpractice is insufficient," *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979), as is "an incorrect diagnosis." *Domino*, 239 F.3d at 756. If "medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation," there is no violation. *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019). We instead require a plaintiff to show that personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

*Spikes v. Wheat*, 141 F.4th 662, 668 (5th Cir. 2025).[17]

Assuming Aucoin could not ambulate, an "incorrect diagnosis [] is insufficient to show deliberate indifference, [] since some medical treatment was provided, even if it was negligent or based on a perfunctory and inadequate evaluation." *Spikes v.*

---

[17] In the discussion of Aucoin's medical claims, the Court cites to cases decided under both the Fourteenth and Eighth Amendment because the duty involved is identical regardless of whether the claim is asserted by a pretrial detainee or a convicted prisoner. *See, e.g., Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).

*Wheat*, 141 F.4th at 669 (quotations and citations omitted). During Aucoin's July 29, 2024 doctor's visit, Authement and other jail medical staff stated that he did not need a walker and suggested that he used his wheelchair as a walker.[18] Aucoin's doctor noted that Aucoin's condition was chronic and that he would refer Aucoin to a specialist, but did not otherwise comment.[19] Aucoin continued to receive medical treatment after the doctor's visit and received a walker less than one month later.[20] Aucoin may disagree with Authement's observations, but Authement's conduct does not rise to the level of deliberate indifference.

Aucoin also fails to establish that Authement intentionally treated him incorrectly. Aucoin avers that Authement made comments regarding his ability to ambulate because she was retaliating against him for previously bringing a lawsuit against the jail.[21] Aucoin testified that Authement's demonstrated her retaliatory intent through her "actions" and "words" towards him.[22] Without more specificity, Aucoin fails to show Authement's intent. Accordingly, Authement is entitled to summary judgment for her medical observations of Aucoin's ambulatory abilities.

---

[18] R. Doc. 61-3 at 140:4–12.
[19] R. Doc. 72-2, ¶¶ 24, 25.
[20] R. Docs. 61-8, 72-1, ¶ 52.
[21] Aucoin previously filed a lawsuit against the jail, *Aucoin v. Larpenter*, 2020-0792 (La. App. 1 Cir. 4/16/21), 324 So. 3d 626, 629, *writ denied,* 2021-00688 (La. 9/27/21), 324 So. 3d 87. Aucoin alleged that in 2017 he was assigned to sleep on a mattress placed on a raised plastic structure on a second story balcony while the jail was undergoing renovations. *Id.*; R. Doc. 72-1, ¶ 23. The mattress was higher than the bottom railing. *Id.* Aucoin alleged that he fell from the balcony while sleeping and was injured such that he was unable to walk without a handicap device. *Id.* The matter settled. R. Doc. 63-1 at 24:12–16.
[22] R. Doc. 61-3 at 198:22–199:8. Authement testified that she had no knowledge of the prior suit Aucoin filed against the jail. R. Doc. 61-9, ¶ 26.

### 2. Authement's denial of Aucoin's request to see a doctor for pain medication resulting in the delay of his receipt of pain medication.

Aucoin also alleges that Authement denied his request to see a doctor to obtain a Flexeril prescription to manage his pain on October 23, 2024.[23]

Under the deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). The standard is so high that the Fifth Circuit recently noted, "In essence, when prison officials have attempted to care for a prisoner's medical needs, even if the care falls short, they have not exhibited subjective deliberate indifference." *Parker v. Hooper*, 171 F. 4th 736, 756 (5th Cir. 2026). "'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" *Gobert*, 463 F.3d at 347 n. 24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995)) (internal citations omitted).

[23] R. Docs. 4-1, ¶ 57, 61-3 at 138:23–139:10, 61-9 at 3 ¶16.

The record reflects, and Aucoin admits, that Authement, an EMT, has no authority to prescribe medication of any kind, including Flexeril.[24] Authement's role in any request for Flexeril submitted by Aucoin was limited to receiving the request and routing it to either her supervisor or the physician.[25] While Aucoin claims that, upon receipt of his request, Authement laughed, said "no," and set it to the side,[26] he admitted that he does not know what she did with his request after she put it aside.[27] He merely speculates that she did not process the request in the "proper way."[28] "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citation omitted).

There is no evidence that Authement denied him treatment or purposely ignored his medical complaints. Rather, the evidence of record demonstrates that any request for prescribed medication must be reviewed by the physician who visits the jail approximately twice a week.[29] That happened in this case. Aucoin received a prescription for the Flexeril about a week and a half after he submitted his medical request and continued to receive the medication through his deposition in this case.[30] Any argument that Aucoin received the medication only after he filed a grievance demonstrates that Authement must have purposely failed to process his request for a prescription for Flexeril is tenuous. First, Aucoin filed his grievance on October 29,

---

[24] R. Docs. 61-3 at 207, 215, 61-9 at 2–5.
[25] R. Doc. 61-9 at 3 ¶ 17.
[26] R. Doc. 61-3 at 139:1–10, 152:6–25, 153:1-6, 207:3–17, 208:15–17.
[27] *Id.*at 208:17–18.__
[28] *Id.* at 207:15–17.
[29] R. Doc. 61-9 at 3 ¶ 18.
[30] R. Doc. 61-3 at 139:4–10, 141:4–13.

2024, just six days, rather than the claimed "week and a half," after he submitted his medical request.[31] Second, the evidence demonstrates that the doctor visits the jail approximately twice a week,[32] and Aucoin admits that it was not unusual to wait a week and a half to see a doctor.[33] While it is clear that Aucoin was not satisfied with speed of his receipt of prescription, "[m]ere disagreement with medical judgments or treatment" is insufficient to meet the deliberate indifference standard. *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (citation omitted).

Regardless, "delay in medical care can only constitute a[] [Fourteenth] Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter*, 467 F.3d at 464 (quotations and citation omitted) (emphasis original). A "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Cudjo v. Hammond*, No. 6:15cv1162, 2018 WL 2709442, at *7 (E.D. Tex. April 26, 2018) (citation omitted), *adopted*, 2018 WL 2684488 (E.D. Tex. June 4, 2018). Here, Aucoin fails to show that he suffered a worsening of his condition or serious harm during the delay. *Id.* at *7–8 (collecting cases) (finding 23-day delay in receiving medication for migraines did not result in substantial harm); *Williams v. Dallas Cnty.*, No. 3–01–CV–0400–D, 2003 WL 21662823, at *3 (N.D. Tex. July 14, 2003) ("Although [prisoner] did not receive pain medication ... for more than two months after his initial request, there is no

[31] R. Doc. 72-2 at 32.
[32] R. Doc. 61-9 at 2 ¶ 9, 3 ¶18.
[33] R. Doc. 61-3 at 209:4–6.

evidence that this delay was the result of deliberate indifference on the part of any defendant or caused substantial harm."), *adopted*, 2003 WL 22359487 (N.D. Tex. Sept. 9, 2003).

Finally, there is no evidence that Authement knew that Aucoin faced a substantial risk of serious harm. Prior to his receipt of Flexeril, Aucoin was receiving his prescribed Tylenol.[34] While Aucoin gave Authement a written request for a Flexeril prescription on October 23, 2024, there is no evidence that he complained of pain at the time of his request. Rather, it was not until he filed his grievance on October 29, 2024, that he stated that the Tylenol "[was]n't doing much on its own."[35]

For these reasons, no finding of deliberate indifference to serious medical needs can be made based on this record. Authement, therefore, is entitled to summary judgment on Aucoin's claims for medical indifference.

### E. Authement is entitled to summary judgment on the retaliation claim.

Aucoin alleges that Authement retaliated against him for filing a prior suit against the jail. A prison official may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct at the facility. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). "This right

[34] R. Doc. 72-2 at 32. Dr. Dickie examined Aucoin shortly after Aucoin was arrested in late July 2022, at which time he prescribed him Tylenol and advised him to continue taking his blood pressure medication; he did not prescribe him Flexeril at that time. R. Doc. 61-3 at 151:20–25, 152:1–20. In September 2022, Aucoin saw Dr. Haydel for a follow-up examination. *Id.* at 158:3–11, 161:13–23.
[35] R. Doc. 72-2 at 32.

of access for prisoners is not unlimited, however; rather, it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 351 (1996)). Prisoners' claims of retaliation should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

To prevail on a claim of retaliation, a prisoner must be able to establish: (1) he was exercising or attempting to exercise a specific constitutional right; (2) the defendant intentionally retaliated against the prisoner for the exercise of that right; (3) the defendant undertook an adverse retaliatory action, greater than *de minimis*, against the inmate; and (4) there is causation: that but for the retaliatory motive, the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusional allegations or his own personal beliefs." *Williams v. Dretke*, 306 F. App'x 164, 167 (5th Cir. 2009).

Aucoin satisfies the first element because he filed a nonfrivolous suit, *Aucoin v. Larpenter*, 2020-0792 (La. App. 1 Cir.). *See Johnson*, 110 F.3d at 311. The parties dispute the second element. Aucoin "must be able either to produce direct evidence of retaliatory motivation or to show a 'chronology of events from which retaliation may plausibly be inferred.'" *Hale v. Williams*, 390 F. App'x 351, 352 (5th Cir. 2010) (quoting *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995)). Authement maintains

that she had no knowledge of the prior litigation.[36] *See Hale*, 390 F. App'x at 352 (finding no triable issue concerning a retaliatory motive because the defendant "was not even aware of" the plaintiff's act for which he claimed defendant retaliated); *Armenta v. Pryor*, 377 F. App'x 413, 416 (5th Cir. 2010) (holding that plaintiff failed to establish a chronology of events from which retaliation may plausibly be inferred where there was "no evidence that any of the Defendants were named in, or had any knowledge of, his prior grievances or his lawsuit."). Aucoin submits that he heard Authement make comments to him such as, "[y]ea, go file suit about that too," "make sure to put that down on paper and make sure you spell my name right," and "watch him, because he likes to file lawsuits!"[37]

Even resolving this factual controversy in Aucoin's favor, however, his claim fails. "[R]etaliation against a prisoner is actionable *only* if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 685–86 (emphasis added). Here, Aucoin has not shown that the confiscation of his wheelchair deterred him from further exercising his First Amendment rights. To the contrary, Aucoin submits evidence of numerous grievances he filed relative to the confiscation of his wheelchair and the denial of his request to see a doctor.[38] *See Young v. Ledet*, No. 20-2165, 2021 WL 799683 (E.D. La. Jan 15, 2021) (finding that retaliation claims failed where prisoner "denie[d] any denial of his right to access the courts or pursue his grievances"), *adopted*, 2021 WL 795981 (E.D.

---

[36] R. Doc. 61-9, ¶ 26.
[37] R. Doc. 72-2, ¶ 52.
[38] R. Doc. 72-2 at 20–34.

La. March 2, 2021), *appeal dismissed*, No. 21-30161, 2021 WL 4300897 (5th Cir. July 6, 2021). Accordingly, Authement is entitled to summary judgment for the retaliation claim.

**F. Authement is entitled to summary judgment on the § 1983 conspiracy claim.**

"Conspiracy claims asserted under § 1983 require plaintiffs to prove (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Bevill v. Wheeler*, 103 F.4th 363, 374 (5th Cir. 2024) (quotations and citations omitted). Because Aucoin has not established a deprivation of an asserted civil right by Authement, his § 1983 conspiracy claim is not actionable against her. *See id.* (citing *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019)); *Smith v. Spinks*, No. CV 24-1891, 2024 WL 5036284, at *3 n.5 (E.D. La. Nov. 19, 2024), *report and recommendation adopted,* No. CV 24-1891, 2024 WL 5010245 (E.D. La. Dec. 6, 2024) ("Without an underlying § 1983 claim, no actionable conspiracy claim exists.") (citations omitted).

**G. State Law Claims**

**1. Authement is entitled to summary judgment on the La. Civ. C. art. 2324 claim.**

Aucoin alleges that Authement, Baio, and Gaudet conspired together to take his wheelchair. Louisiana Civil Code Article 2324 provides that a person "who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." "Conspiracy by itself is not an actionable claim under Louisiana law, and must be based on an underlying tort." *Redmellon, L.L.C v. Halum*, No. 2:23-CV-5754, 2025 WL 932397, at *17 (E.D.

La. Mar. 27, 2025), *appeal dismissed sub nom. Redmellon, L.L.C. v. 1001 Canal, L.L.C.*, No. 25-30256, 2025 WL 3002989 (5th Cir. June 6, 2025) (citing *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 2010) and *Ross v. Conoco, Inc.*, 828 So.2d 546 (La. 2002)). The parties agree that to recover under a conspiracy theory of solidary liability, a plaintiff must prove that (1) an agreement existed to commit an illegal or tortious act; (2) the act was actually committed and resulted in plaintiff's injury; and (3) there was an agreement as to the intended outcome or result." *Id.* (citing *Crutcher–Tufts*, 38 So.3d at 991).

Aucoin believes that because Authement, Baio, and Gaudet all threatened to take his wheelchair on different shifts, they had an agreement to take his wheelchair.[39] He concedes, however, that Authement, Baio, and Gaudet only threatened to take his wheelchair if he did not use it as a walker after his doctor's appointment.[40] Thus, the threats appear to stem from the results of Aucoin's doctor appointment, rather than an agreement. Again, Aucoin's vague citations to the alleged co-conspirators' "words" and "acts" are not evidence of an agreement or any intent.[41]

Aucoin also argues that Authement entered into an agreement because she ordered an officer to take another handicapped inmate's wheelchair a year prior to

[39] R. Doc. 61-3 at 194:23–195:5.
[40] R. Doc. 72-2, ¶ 27.
[41] To the extent that Aucoin alleges that Authement conspired to deny his request for a doctor's appointment, his claim is dismissed. For reasons that overlap with those stated above, Aucoin does not present any evidence of an injury resulting from any alleged delay or denial.

the events in Aucoin's complaint.[42] The link between this event and the alleged agreement is tenuous, at best, and does not show that Authement conspired to take Aucoin's wheelchair.

For reasons that overlap with those stated above, Aucoin also fails to present evidence linking Authement's actions to the confiscation of his wheelchair. *See Chiasson v. Rogers-Premier Enters., LLC*, No. CV 19-2502, 2019 WL 4805886, at *3 (E.D. La. Oct. 1, 2019) ("To be jointly liable under Louisiana law, two tortfeasors must have both caused a plaintiff's injury.") (citing La. Civ. Code art. 2324(B)). It is undisputed that Baio took his wheelchair after reviewing a video of Aucoin defending himself against another inmate.[43] For these reasons, Authement is entitled to summary judgement on Aucoin's Article 2324 claim.

**2. Authement is entitled to summary judgment on the La. Civ. C. arts. 2315 and 2316 claims.**

Aucoin alleges that Authement's conduct constituted negligence and negligent misrepresentation under Louisiana Civil Code articles 2315 and 2316. "Under Louisiana law, [t]he duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citations and quotations omitted). Aucoin must prove five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard

[42] R. Doc. 72-2 at 18.
[43] *Id.* ¶ 33.

> conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So. 2d 627, 633).

"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Labit v. Palms Casino & Truck Stop, Inc.*, 2011-1552 (La. App. 4 Cir. 5/9/12), 91 So. 3d 540, 543, *writ denied,* 2012-1310 (La. 9/28/12), 98 So. 3d 843 (citations omitted). The existence of a duty is a question of law. *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 473 (citations omitted). "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.*

Here, Aucoin has not cited any law relative to Authement's duty to conform to a specific standard.[44] And, as discussed above, Aucoin has not demonstrated causation between any of Authement's actions and any alleged injury. Accordingly, Authement is entitled to summary judgment as to the negligence claims.

---

[44] The Court cannot conclude on this record whether Authement is entitled to qualified immunity under La. R.S. 40:1233 A(1) because it is unclear what actions Authement took following the instructions of a physician. *See Rathey v. Priority EMS, Inc.*, 2004-0199 (La. App. 4 Cir. 1/12/05), 894 So. 2d 438, 461, *writ denied,* 2005-0789 (La. 5/6/05), 901 So. 2d 1107, and *writ denied,* 2005-0802 (La. 5/6/05), 901 So. 2d 1108 ("[T]his immunity does not cover intentional or grossly negligent acts or omissions. The Legislature further conditioned this immunity by limiting its application to circumstances in which EMTs are both (i) rendering emergency medical care to an individual while in the performance of their medical duties, and (ii) following the instructions of a physician.") (citations omitted).

### 3. Authement is entitled to summary judgment on the Article I, § 20 and Article I, § 3 claims.

Aucoin alleges that Authement violated her rights to human treatment and individual dignity under Article I, § 20 and Article I, § 3 of the Louisiana Constitution. On its face, Article I, § 3 only addresses *laws* that affect an individual's rights:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.

La. Const. art. I, § 3. "This provision does not create a private right of action [] and thus this claim fails." *Washington v. Louisiana*, 628 F. App'x 914, 917 (5th Cir. 2015) (citing *Smolensky v. Gen. Elec. Co.*, No. CIV. A. 99-1849, 2000 WL 341031, at *9 (E.D. La. Mar. 30, 2000)). Aucoin's claim under Article I, § 20 fails for same reasons. *See* La. Const. art. I, § 20 ("No *law* shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment.") (emphasis added); *Carter v. Derr*, No. CV 18-0068, 2019 WL 3202227, at *14 (W.D. La. June 19, 2019), *report and recommendation adopted,* No. CV 18-0068, 2019 WL 3162485 (W.D. La. July 15, 2019) (holding that Article I, § 20 does not provide a private cause of action). Thus, Authement is entitled to summary judgment on the Article I, § 20 and Article I, § 3 claims.

Accordingly,

**IT IS ORDERED** that the Motion (R. Doc. 61) is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment is granted in Authement's favor and that the claims against her are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Clerk mail Aucoin a copy of the Motion (R. Doc. 61).

New Orleans, Louisiana, this 21st day of August, 2026.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE